Good morning, Your Honor. Tim Warriner for Mr. Washington. I want to begin with the issue of the sentencing error. Mr. Washington was given a two-level enhancement for witness intimidation. I contend that he should not get that enhancement because it is really based on jailhouse rumor, and it is based on the fact that he is a witness. It is based upon unsubstantiated statements from these informants or from unknown persons. Part of the basis for that is when an unknown inmate, a guy named Soldier, told an informant that, hey, Washington put out a kill kite on you. The court never questioned this inmate named Soldier. We have no idea who this person is. We have no idea if he's a real inmate or not. And it is true that I believe that was Lawrence Nelson who did testify to that, who did say that this other inmate, Soldier, told me this. It does not make what Soldier said reliable. It does not make it an appropriate basis to enhance Mr. Washington's sentence by two levels. And along the same line, another basis for that enhancement was that Mr. Washington was heard talking, the words from the PSR were talking loudly amongst his co-defendants about a plea. That evidence, if you call it that, it lacks context. It's vague. We don't know what was said. If somebody is going to be enhanced for witness intimidation, we ought to know what was said. We ought to know the words that were said that were intimidating. Another basis, really the other basis for this enhancement, is that an informant stated that Mr. Washington told him, hey, one of my co-defendants can't testify against me because the guy's got some prior criminal conduct. That's it. That's not intimidating. It's probably the case in, you know, 50% of the federal cases in SEC court. Yes. It was a little more than that because as it's recounted in paragraph 42, it was that Washington also told a CS, we know who it is, that one of his co-defendants would not cooperate with authorities because Washington had information on him that the co-defendant had been involved in the homicide. In other words, he better be careful or else I'm going to, if he testifies against me, I'm going to use this against him. Why couldn't the district court find that the enhancement applied based on that kind of a comment? Well, I guess first of all, what is interesting about that comment is that we don't have Mr. Washington saying to a co-defendant, hey, you testify against me, you know, I'm going to open up this can of worms for you, but you don't do it. We do not have that. We have Mr. Washington telling an informant, you know, if the co-defendant testifies, I've got information that could be used against him. And so I think, again, we've got, there's a context issue and there's an ambiguity issue. Yeah, he knows information that could be helpful. Is he saying it could be helpful at trial? Pretty common for a defendant to have information about informants and to tell their attorneys, hey, look into this or question them about this. I don't think that there's anything about that that you could hang your hat on to give this guy a two-level enhancement. Don't those go more to weight, unlike your argument with respect to Soldier, where it's an issue of threshold, there's no indicia of reliability. Don't your arguments on this other theory really go to weight and we review this only for clear error, isn't that correct? I don't think so. I think there's a threshold in there some way or even as to weight. I mean, talking loudly, telling somebody, hey, the guy testifies against me, I've got information on him that I could use. That's not, you don't have any threatening statements to one of the co-defendants. There are no threatening statements. Mr. Hitt, I don't believe, could explain what threatening statement was made and that's what's required for witness intimidation. Somebody's got to be intimidated. And instead, what we have, I mean, the odd thing about this is that here's Mr. Washington, he's in jail pretrial for, I believe, close to, between three and four years. What we know about him is he's a model inmate. A jail deputy says that this guy is a model inmate. He picked up some piece of tile, which could be used as a shank. He returned that. This guy, and he's a trustee, right? Those guys are allowed to go with freedom throughout the jail, serve people, inmates, and do whatever at the jail. So, you know, I just think the witness intimidation, it is, it doesn't, it's not even for weight. There is a threshold there and it hasn't got to that threshold. We don't have the actual statements. Is it your position that your challenge to this encompasses all counts of conviction? Oh, we're talking about my... Witness intimidation. The witness intimidation? Yes. Yes. How about the leadership on organizers? Are you challenging that as to all counts of conviction? I think the leadership, it is an interesting situation and it's fact-specific. It begins with the premise that for there to be the leadership enhancement, there is required an exercise of control, that you're controlling, exercising control over people. And that is, in essence, the crux of it. Now, we have what I refer to as the insider witnesses. And essentially, I think it shows really that Mr. Washington having these ad hoc relationships with individuals or group of individuals involved in either getting the drugs or selling the drugs. That was the first conspiracy count, right? Right. Yeah. Count one, the count one conspiracy. That's the one where you argue there should have been the sua sponte... Exactly. Exactly. ...unanimity. So, how could he be found to be leadership or control when you don't even identify the conspiracy? Right. And that's the first, that's my first argument that, look, there should have been a unanimity instruction because... That only goes to count one, correct? Right. Yeah. That's correct. So, if we were to reverse on count one, how would it have...leaving aside the sentencing, it would really have no practical effect on his time in prison, would it? Well... He had all these other convictions for 360 some 409 or whatever it was. Right. I mean, there are all the individual violations, I believe, in 2012, the individual sales violations as well as the count two conspiracy. And, you know, count one, what I would say is I think in a global sense in terms of presenting the sentencing case that it could have an effect on the sentence given that there was a 3553 argument. I mean, just the extreme length of the sentence, 408 months. And maybe some indication that he had turned, you know, turned the corner on this, turned the back on this and had a lot of support from his family. So, the answer is that I think that some of the...could some of the drug quantities still be used under a relevant conduct theory for that count one? That's possible. There's also a lot of vagueness in the testimony of these individuals, of the insider witnesses about exactly what was...what were the quantities, what was being done and sort of reliability issues that connected with them. So, that's count one. You're not challenging count two? The...yeah, count two is...I'm not challenging count two on the grounds of the lapier issue. The other issue that comes up, which really goes to both counts, is this issue of the court refusing to give any sort of a readback of Mr. Mack's testimony. And it is an abuse of discretion standard, but I think there are some interesting little twists to this because Mr. Mack and it's present from the reading of the transcript, it was hard to understand. Everybody was saying, can you please repeat yourself? Can you speak up? People had trouble understanding this guy. His testimony was some of the earlier testimony in the case. It went on for a long time and the jury wanted a read. You know, basically, the jury is going to determine Mr. Washington's fate for the rest of his life, wanted a readback and wanted this evidence. And, you know, I guess I come doing trial work in state court a lot and it's done frequently and it's done all the time. I understand the cases, which there are some that cut against us, but I think it's a little bit shocking that somebody facing such dire consequence and the jury is trying to make this important decision couldn't have this under those circumstances. I thought it was a little...I just thought it was the wrong decision. And concern about it being cumbersome. Court reporters, as we know, bring stuff up all the time. They could bring that back. The importance of it in terms of the concern of undue focus on this. The cases that deal with that are really different. One of them is one where the testimony is diametrically opposed. For instance, it was a child victim and an alleged perpetrator and the court said that you couldn't just read back the child's testimony because it would just unduly emphasize one side of this. You just don't have that as here. This is just an important informant that was somewhat successfully challenged in terms of his credibility issues. So I'll reserve the rest of my time. Can I ask you about the Lapeer issue? Sure. You outlined five potential conspiracies in your brief that you consider could have been found by the jury and that gives rise to the specific unanimity problems. How many of those five conspiracies involved crack cocaine? I'm going to have to check my notes for that. Going through your brief, it appears to me, and I think you have this correctly, that only one of them does, which is conspiracy number two. The other ones that you have in your brief all involve either heroin or powder. Given that the jury made a specific and unanimous finding that he had conspired with respect to crack, doesn't that mean that at least we know that that one conspiracy was unanimously found, meaning that this did not affect substantial rights under plain error review? You saved the tough questions for last. I think that's one thing about the drug quantity instruction is it does refer to conspirators in the plural. It doesn't limit it, and it doesn't preclude. I don't think it does preclude the Lapeer issue just because we can't assume they just relied and were focused on this crack, solely the crack issue. But it says on the verdict form, it says, if you found the defendant guilty of count one, do you find beyond a reasonable doubt that the defendant conspired to distribute or to possess with intent to distribute cocaine based known as crack cocaine? Yes. And if the evidence only permitted one conspiracy as to crack, you may be right that the other stuff is tainted, but that count one can stand on any of the drugs, and we know that the crack has only one conspiracy, and that one was found. I would say that quantity was found. It didn't say anything about quantity. Actually, even though the instruction said quantity, they only did quantity on heroin. I don't know why. But the other one, they just were asked to find that it involved the drug, and they did make the finding unanimously. Right, that it involved crack cocaine, specifically that it involved. I guess my take is it doesn't preclude still one juror's basing the conclusion to count one based upon the different groups of conspirators. Maybe I could respond to it if I can, rebuttal. I've got about a minute left, and I may actually trouble the court and request if I could probably just a supplemental letter and address that issue as well. And if you do do that, would you also let us know how that would have affected sentencing if we were to say that that was the sole conspiracy conviction that could be sustained under the evidence? That would also have an impact on drug quantity, which would affect the sentence. Sure. Okay. I'll reserve the rest. Good morning, Your Honors. Jason Hitt on behalf of the United States. I want to briefly respond to some of the questions the court had for Mr. Warner. And kind of cutting to the chase, I think on the question about would it make any difference, in this case Mr. Washington will be 360 to life under any scenario. So if count one were vacated, for example, it's still undisputed that he has three predicate qualifying felonies for career offender. So even if some of the enhancements fell away, for example, 37 and six will be the default because it's the career offender guideline, and that would be true of the conviction on count two, which is not challenged. With respect to the specific questions that were raised on the two-level increase, I may have made the burden harder on myself than I needed to. I was reviewing some cases, and if the court finds that the question raised is the application of the facts to the sentencing enhancements as to leadership and intimidation, in Gasca Ruiz, the court found that that's an abuse of discretion standard. I was looking at it as more were the facts, reviewing the facts the district court found, that would be clear error. So if it's under either standard, which are both deferential, our position would be we prevail. But I wanted to alert the court that I may have messed that up in formulating the standard of review. With respect to leadership, I do think it's worth correcting that under this court's case law, control over others is not required. In the Doe case, organizer for purposes of enhancement is a defendant who has the ability and influence necessary to coordinate the activities of others to achieve the desired results. And what the evidence showed in this case as to the leadership in both conspiracies was that Mr. Washington was very adept at developing large-scale suppliers, which put him in the position to set the prices for the downstream distributors like Mr. Mack. And in this case, the Count II conspiracy, I think it's almost undisputed that there were the maximum number of participants needed for a four-level enhancement and that the jury found overwhelming evidence of Mr. Washington's leadership, and the court was well within its discretion in finding that enhancement proper. So was the enhancement just applied to Counts I and II? In the PSR, as I understand, I believe that it was the specific PSR, paragraph 44, talked about Count II conspiracy. In the sentencing, it's a little less clear. The district court, I think, pointed to both conspiracies as supporting it, and I argued independently that both conspiracies would support it. I think the district court's finding in the sentencing transcript goes more towards both, so that either or, that's my understanding of the court's finding. But none of the other counts? I'm sorry? In other words, the leadership enhancement, organizer enhancement, did not apply to anything but Counts I and II. I think that's right. The distribution counts were during and in furtherance of the conspiracy under Pinkerton liability, and then the two substantive possession with intent came from Stash House seizures. And I'd briefly touch on the readback issue that Mr. Werner raised. In this case, what's worth pointing out, I think, different from what's in the brief, is the undue emphasis was particularly important here, where you had five other cooperating witnesses who testified different from Mr. Mack, or in addition to Mr. Mack. When the court was weighing whether to permit the readback, I think it's fair to say that the court exercised its discretion appropriately by saying, I don't want the jury focusing on just one cooperator where five others also testified. It's also worth pointing out that as to Count I, Mr. Mack was not a critical witness. If the readback had been for Mr. Nelson's testimony, for example, it might be a closer question, but Mr. Mack was a downstream distributor of drugs from Mr. Washington. I'm not sure in light of the colloquy I had with your opposing counsel that that's true, because if Count I is saved from a specific unanimity problem only because of the crack cocaine conspiracy, Mack is quite central to that issue, and so the notion that you can sustain this without regard to him and that he's unimportant doesn't seem to fly in light of that, and so how does that factor into the readback issue? That's a fair point, Your Honor. As the court formulated it, I hadn't thought of it in that way. Mr. Mack's testimony, had the readback been permitted, was not good for Mr. Washington. Obviously, the jury credited it. It was direct evidence of multiyear drug trafficking where Mr. Washington was his superior and, in fact, recruited him to shift from crack cocaine to heroin later in the conspiracy because heroin was more profitable, and he told Mr. Mack, you should start selling that drug because I'm going to make more money. So I think given the standard is abusive discretion and the district court clearly articulated this court's requirement for making a finding that undue influence or emphasis would be a problem, I think the court acted well within its discretion to not permit the readback. The final point I wanted to make on the single-issue unanimity question, it's important to note that Mr. Washington's defense in this case, he never asked for this instruction, and that makes sense because he didn't argue it. The closing argument of defense counsel really focused on the believability and credibility of the witnesses, and given that defense, there wasn't an argument of, ladies and gentlemen, you can't find that he was part of this conspiracy, as some defense counsel have argued, and that can be an effective tactic. That just wasn't Mr. Washington's defense in this case, and a single-issue or the unanimity instruction simply wouldn't have advanced that theory. And unless there are specific questions I'm prepared to submit, we'd ask that count 1 be confirmed. I do have a question about the witness intimidation because, as I see it, there's two alternative bases. There's the soldier for whom we don't really know anything about him, and then there's this other comment that I read from Paragraph 42 about, I've got the goods on him on something else if he testifies against me. But in Paragraph 42, it's referred to as a CS. You say in your brief who that person is, and you say that defense counsel knew who the person was. The problem, though, is no one ever told the district courts. The district court didn't know that it actually had heard from that person and could have evaluated his study, but you never told the district. So can we do anything with that in assessing the district court's finding when the district court had no clue who this anonymous CS was, even though he had been a witness at trial? I think, well, in fairness to Mr. Warner, he was not trial counsel. He had substituted him before sentencing, so it's possible for him. It may not have been readily apparent who the CS was. And I don't know that you can infer the district court didn't know who it was. If I remember correctly, I'd have to review my sentencing memorandum. I may have mentioned specifically these episodes, certainly as to the soldier and the kill kite and the hit that came out during trial. Right, but I'm referring to the— And with respect to Paragraph 42, I think the court, given that I may have screwed up the standard, if it's abusive discretion or if it's clear error, I don't think the district court clearly erred or abused its discretion in making that finding based on the facts reported in Paragraph 42. And there's one important clarification. In Paragraph 42, it mentions not only that Washington and the co-defendants were heard loudly discussing the case—this is the critical part— and Washington warned them not to cooperate with the government. And that's where the district court was well within its authority to rely on that reporting in Paragraph 42. And I think independently both could be— and whether the district court made the connection that that was Refugio Montoya or not, I think the facts reported adequately support the two-level enhancement. I'm just looking at your sentencing memorandum, and you did identify Lawrence Nelson in that. Yes. Thank you, Your Honor.  I'll submit. Thank you, Your Honor. Thank you. Thank you. The 30 seconds that I have. Yes, so Paragraph 42 does mention loudly discussing and warning not to cooperate with the government. And I still think that this rises to the issue of threshold, whether this is intimidation. This is standard stuff that goes on at the jail with a bunch of guys in their case talking together at one of the tables in the lunchroom. Do you know whether Montoya's identity as the CS in Paragraph 42 was disclosed to the district court? I'm not aware that it was. And then in terms of the Lapierre issue, I'm sorry, I'm almost out of time, but the—Lapierre was a plain error case. So I know that this issue is—he says this wasn't argued, but Lapierre was a plain error case. And the court in Lapierre was very solicitous of the right to a unanimous verdict. And it came out in reverse. The court said that we had essentially no idea how the jury would decide this, that we did not know what acts formed the basis of the conviction, and we were not going to speculate what a jury might have done. So Lapierre was a plain error case. But I would ask to provide the court with a supplemental letter brief on this issue of the crack cocaine instruction as to count one. Yes. If we want additional briefing, we'll send out an order. Okay. Thank you. Thank you, both, for your arguments. The case just argued to be submitted for decision, and we will take our morning recess for 10 minutes. All rise.
judges: Thomas, Wardlaw, Collins